Carroll,
No. 5142.

## Moultonboro *v.* Arthur J. Bissonnette.

Argued October 1, 1963.
Decided December 30, 1963.

*Nighswander, Lord & Bownes* (*Mr. Hugh H. Bownes* orally), for the plaintiff.

*Wescott & Millham* (*Mr. Harold E. Wescott* orally), for the defendant.

KENISON, C.J. The plaintiff municipality claims title to the landing place by virtue of its charter of 1763 (N. H. State Papers, Vol. XXVII, *p.* 521, 523); a vote of the town meeting on March 10, 1818 appointing a committee of three to "look after the landing place near Center Harbor"; and the recording of the committee report of 1819 in the town records stating that it had attended to its duties to lay out a landing place agreeable to the charter together with a plan thereof.

The defendant maintains that the layout was illegal, and that there was no authority for such a layout by a town committee. While it is true that early land titles in New Hampshire are permeated with certain informalities and some indefiniteness, titles, derived from public grants, have been given a presumption of regularity. *Bow* v. *Allenstown*, 34 N. H. 351. See also, the historical construction placed on early titles in *Hampton* v. *Palmer*, 102 N. H. 127. In addition to the presumption of regularity in such cases the burden has been placed on the contestant to show a better title than the town in order to successfully maintain his claim. See *Fowler* v. *Owen*, 68 N. H. 270. This has tended to alleviate uncertainty of title which would otherwise result. *Cushing* v. *Miller*, 62 N. H. 517. See Akagi, The Town Proprietors of the New England Colonies (1924). "Few states have had as many difficulties concerning the derivation of private land titles as New Hampshire. The indefiniteness and overlap of early charters, the conflicts between grants made by the King, by the New England Council, by Indians, by Mason, by New Hampshire towns and colony and by Massachusetts Bay have resulted in a century and a half of considerable litigation." 1 Powell, Real Property, *s.* 57, *p.* 162 (1949); Sanborn, New Hampshire, *p.* 24 (1904); Fry, New Hampshire as a Royal Province, *pp.* 209-320 (1908). In spite of these difficulties early titles based on legislative and municipal activity have been accorded a presumption of validity when subjected to attack in the Twentieth Century. *Dana* v. *Craddock*, 66 N. H. 593.

In addition to its record title mentioned above the plaintiff municipality has exercised dominion over the landing place by various leases executed in 1929 and by its actions in attempting to prevent the defendant from rebuilding a boathouse in the

waters of Lake Winnipesaukee situate in front of the landing place on the shore of the lake. We conclude, as did the Trial Court, that the plaintiff had standing to bring this petition for injunction and that its title in fee is valid. See *Cilley* v. *Cayford,* Smith Report 150 (1807). While it is true that acts of dominion by the plaintiff municipality have not been as extensive between 1818 and 1929 as they had thereafter, this is not fatal to its title. "Experience does not justify the presumption that the community at large will assert their public rights, with the same promptness with which individuals assert their private rights. The opposite is notoriously true." *State* v. *Company,* 49 N. H. 240, 252; *State* v. *Stafford Company,* 99 N. H. 92, 97.

The Trial Court made alternative findings and rulings on the question of the plaintiff's laches in maintaining its rights against the defendant. On the evidence it decided that the town used seasonable diligence in protecting its rights and was not guilty of laches and this finding is supported by the evidence. The defendant purchased the boathouse in a dilapidated condition in 1960 for $350. He was warned by the selectmen of the town after he had expended $1500 in rebuilding a new boathouse to discontinue this operation but he continued to complete it. The defendant's title is not traced to any grant from the town (*cf. Cheever* v. *Roberts,* 82 N. H. 289, 291) and there has been no action by the town which could be construed as encouraging the rebuilding of the boathouse in front of the landing place. Inasmuch as the town's right of access to and from the landing place will be adversely affected by the defendant's acts, the granting of an injunction against the defendant was proper. *Hoban* v. *Bucklin,* 88 N. H. 73; *Hartford* v. *Gilmanton,* 101 N. H. 424; RSA 477:34.

The Trial Court as an alternative ruling on laches held that this defense was not available against the town for the same reason that is was not available against the State. Reliance was placed on the following quotation from *State* v. *Stafford Company,* 99 N. H. 92, 97: "Since the State's rights in land and waters are not always enforced and protected with the same alacrity as private rights . . . the Legislature has provided that no person can acquire title to State lands by adverse possession . . . For the same reason it has been decided that the State does not forfeit or lose its rights to public lands and waters by laches, estoppel or waiver." We find it unnecessary to determine this question because in any event the Trial Court's ruling

that laches did not apply on the facts of this case is supported by the record. *Hampton* v. *Palmer*, 102 N. H. 127; *Hampton* v. *Seabrook*, 98 N. H. 84, 89.

*Exceptions overruled.*

All concurred.